UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

BURTON W. WIAND, as Receiver for
VALHALLA INVESTMENT PARTNERS,
L.P.; VIKING FUND, LLC; VIKING IRA
FUND, LLC; VICTORY FUND, LTD.;
VICTORY IRA FUND, LTD., AND
SCOOP REAL ESTATE, L.P.,

           Plaintiffs,

v.                                   Case No. 8:10-CV-248-T-17MAP

SARASOTA OPERA ASSOCIATION, INC.,

           Defendant.

_____/

## REPORT AND RECOMMENDATION

     This case emanates from a Securities and Exchange Commission enforcement action aimed at dealing with the aftermath of a massive Ponzi scheme perpetrated by Arthur Nadel, a hedge fund manager.[1]  Burton W. Wiand ("Wiand"), the receiver appointed in that action, contends the Sarasota Opera Association, Inc. (hereinafter together referred to as "the Defendant") received charitable contributions from Nadel's scheme, and he has sued the entity under Florida Uniform Fraudulent Transfer Act ("FUFTA"; *see* Fla. Stat. 726.101, *et seq.*) and for unjust enrichment to recover those funds.  Defendant moves to dismiss the amended complaint for a host of reasons: the complaint fails to meet the specificity requirements of Rule 9(b); it fails to state a claim Rule 12(b)(6); certain FUFTA claims are time barred; and because the Defendant is a subsequent transferee who took in good faith, the actual fraud claim is not

_____

[1]  *See Securities and Exchange Comm. v. Arthur Nadel, et al.,* Case No.  8:09-cv-87-T-26TBM.

voidable per Fla. Stat. § 726.109(1) (doc. 32).  After consideration, I recommend the motion be granted with regard to certain transfers to Defendant that occurred more than four years before the filing of Wiand's initial complaint; in all other respects, I recommend Defendant's motion be denied.[2]

   *A. Background*

   Per the amended complaint, Nadel, through his charitable foundation, the Guy-Nadel Foundation, Inc.  (The "Foundation"), and jointly with his wife, Marguerite "Peg" Nadel (collectively the "Nadels"), made numerous contributions to Defendant.  *See* doc. 29-1 Ex. A.[3] Wiand alleges all these contributions emanated from the Ponzi scheme.  As a result, Wiand by his amended complaint seeks avoidance of these contributions, citing violations of FUFTA (*i.e.*, Fla. Stat. §§ 726.105(1)(a), 726.105(1)(b), and 726.106(1)) and unjust enrichment.  In sum, Wiand alleges that allowing Defendant to keep these contributions would be inequitable and unjust, including to the investors of the Hedge Funds as a whole, because all such money

---

   [2]  Per 28 U.S.C. § 636 and Local Rule 6.01(b), the district judge referred these motions to me for a report and recommendation.

   [3] Exhibit A lists the following money transfers at issue in this case:

   December 28, 2004, Art and Peg Nadel transferred $250,000.00
   December 2, 2005, Guy-Nadel Foundation, Inc. transferred $100,000.00
   May 10, 2006, Guy-Nadel Foundation, Inc. transferred $12,000.00
   December 15, 2006, Guy-Nadel Foundation, Inc. transferred $100,000.00
   December 22, 2006, Guy-Nadel Foundation, Inc. transferred $2,000.00
   August 22, 2007, Guy-Nadel Foundation, Inc. transferred $16,000.00
   October 31, 2007, Guy-Nadel Foundation, Inc. transferred $350.00
   December 3, 2007, Guy-Nadel Foundation, Inc transferred $100,000.00
   January 30, 2008, Guy-Nadel Foundation, Inc. transferred $200.00
   March 11, 2008, Guy-Nadel Foundation, Inc. transferred $2,000.00
   April 3, 2008, Guy-Nadel Foundation, Inc. transferred $575.00
   May 16, 2008, Guy-Nadel Foundation, Inc. transferred $20,000.00

transferred or paid to Defendant, as a subsequent transferee, was diverted and misappropriated by

Nadel in furtherance of his scheme. Wiand also alleges that all of the money transferred to

Defendant, as a subsequent transferee, was improperly diverted assets of one or more of the

Hedge Funds. *See* Amended Complaint, doc. 29, ¶¶ 98-101.

      B.  *Discussion*

          1.  *rules*

      The Federal Rules of Civil Procedure generally do not require a plaintiff to set out in

detail the facts upon which he bases his claim.  Instead, all that ordinarily is required is that the

claimant set forth a "short and plain statement of his claim showing that the pleader is entitled to

relief" in order to "give the defendant fair notice of what the ... claim is and the grounds upon

which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1964 (2007).

Hence, while a plaintiff attacked by a Rule 12(b)(6) motion to dismiss does not need detailed

factual allegations, he is obliged to provide the "grounds" of his "entitlement to relief," more

than labels and conclusions, and a formulaic recitation of the elements of a cause of action will

not do." *Twombly*, 550 U.S. at 555.  Nevertheless, the complaint still must "contain sufficient

factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v.

Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citation and quotations omitted).  "Where a complaint

pleads facts that are merely consistent with a defendant's liability, it stops short of the line

between possibility and plausibility of entitlement to relief." *Id*. (citation and quotations

omitted).

      Rule 9(b) imposes a more stringent pleading standard for a party alleging fraud.

Nonetheless, courts relax Rule 9(b)'s heightened pleading requirement for plaintiffs who are

trustees or receivers who are "third party outsiders to the fraudulent transactions" with only second-hand knowledge of the fraudulent acts. *See generally David M. Levine v. Walter Shacklett, et al.*, case no. 8:04-CV-1164-T-24EAJ (M.D. Fla. Feb. 4, 2005) (doc. 82, pp. 7-8) (order denying motion to dismiss, rejecting defendant's argument that rule 9(b) applies to fraudulent transfer claims); *Perlman v. Five Corners In vestors I* 2010 WL 962953, *4 (S.D. Fla. March 15, 2010) ("A fraudulent transfer claim, by contrast, involves a third-party defendant who has no relationship with the plaintiff, and thus the plaintiff usually has insufficient information to plead its claim with specificity. As a result, Rule 9(b)'s heightened pleading standard does not apply to claims brought under FUFTA."); *Steinberg v. A Analyst Limited et al.,* 2009 WL 806780, *3-4 (S.D. Fla. March 26, 2009) (recognizing that Rule 9(b) should not be applied to cases where violations of FUFTA are asserted because unlike common law fraud claims, fraudulent transfer claims are asserted against a person or entity that did not deal directly with the plaintiff in the challenged transaction and there for the plaintiff generally possesses little or no information about the alleged fraudulent transfer); *David Levine v. Manfred Schillinger, et al.*, 01-6849-CIV-RYSKAMP, at pp. 5-6 (S.D. Fla. Dec. 21, 2001). *See also In re Bernard Madoff Inv. v. Securities LLC*, 445 B.R. 206 (S.D.N.Y. 2011) (finding trustee adequately pled claim to recover fraudulent transfers from subsequent transferee and that court only need apply a rule 8 analysis).

### 2. FUFTA

Wiand's first count asserts three alternative FUFTA violations: "actual fraud" under §726.105(1)(a), and two separate theories of "constructive fraud" under §§ 726.105(1)(b) and 726.106(1). Defendant argues the Court should dismiss these claims because the amended

complaint fails to meet Rule 9(b)'s pleading requirements for fraud and fails to state a viable cause of action (the Rule 12(b)(6) argument).  Given that I find Rule 9(b)'s heightened pleading standard inapplicable for the reasons outlined above, only the Defendant's Rule 12(b)(6) arguments require further explanation.

### a.  actual fraud

Pursuant to Fla. Stat. §725.105(1)(a), "[a] transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation [ ] with actual intent to hinder, delay, or defraud any creditor of the debtor." Defendant asserts that count one is deficient because Wiand fails to plead with particularity that the transfers were made with the actual intent to hinder, delay or defraud creditors; fails to allege with factual specificity the alleged transfers made to Defendant; and fails to allege with specificity that any transfers made from Arthur Nadel to the Guy-Nadel Foundation and subsequently to Defendant were in furtherance of the alleged Ponzi scheme, that the charitable contributions were made to keep the Ponzi scheme ongoing with intent to hinder, delay or defraud investors, or that the perpetrator of the Ponzi scheme authored or directed the charitable contributions.

In cases like this, the requisite intent to hinder, delay or defraud may be established by the underlying scheme.  *See United States v. Silvestri*, 409 F.3d 1311. 1317 n.6 (11th Cir. 2005) (in a Ponzi scheme, additional money invested by investors is used to pay returns to investors with the goal of attracting more investors);  *In re World Vision Entertainment, Inc. v. R.W. Cuthill, Jr.*, 275 B.R. 641 (M.D. Fla. 2002) ("to prove actual fraud ...  in cases involving a Ponzi scheme, the

analysis is simplified because fraudulent intent is inferred"); *Hecht v. Malvern Preparatory School*, 716 F.Supp. 2d 395, 400-01, 402-03 (E.D.Pa. 2010) (denying motion to dismiss receiver's fraudulent transfer and unjust enrichment claims to recover donations to school from scheme proceeds); *Quilling v. Stark*, 2006 WL 1683442 (N.D. Tex 2006) (denying motion to dismiss complaint alleging Stark operated a Ponzi scheme and diverted scheme proceeds to family members, finding that less detail is required in the complaint because additional detailed information regarding transfers peculiarly within knowledge of Stark). The amended complaint adequately pleads the elements establishing a Ponzi scheme. For example, it states that investments from approximately 370 investors in the Hedge Funds were pooled and commingled as part of the scheme (amended complaint, ¶¶ 77-87); the Hedge Funds never generated the trading gains represented to the investors (amended complaint, ¶¶ 13, 83-97; money was transferred from the scheme to the Foundation and the Joint Account (amended complaint, ¶¶ 98-101); the date, amount, transferor, and transferee of each transfer Wiand seeks to recover from Defendant (amended complaint, exhibit A); all money transferred to Defendant as a subsequent transferee was improperly diverted assets from one of more of the Hedge Funds (amended complaint, ¶ 101); no reasonably equivalent value was provided for scheme proceeds received by Defendant (amended complaint, ¶¶ 99, 108); and the remaining assets in the Hedge Funds were unreasonably small in relation to the transfers (amended complaint, ¶ 107).

Moreover, the amended complaint adequately alleges the requisite "actual intent to hinder, delay, or defraud any creditor" pursuant to Fla. Stat. §726.105(1)(a). Here, the relevant intent is the one associated with the "initial" transfer out of the Hedge Funds. The amended complaint alleges that those transfers occurred as part of the scheme, and consequently,

establishes the requisite intent to hinder, delay or defraud creditors.  Wiand alleges that

Defendant received contributions originating from the investments in the Hedge Funds;

Defendant did not provide any value whatsoever in return for these contributions; and the

remaining assets of the Hedge Funds were unreasonably small in relation to the transfers to

Defendant.  Wiand further alleges that "[a]ll such money transferred or paid to Defendant, as a

subsequent transferee, was diverted and misappropriated by Nadel in furtherance of his scheme.

Thus, all of the money transferred to Defendant, as a subsequent transferee, was improperly

diverted assets of one or more of the Hedge Funds."  Amended Complaint, ¶ 101 (incorporated

by reference into Count I via ¶ 102).  The transfers were made to Defendant from the Foundation

and from a personal checking account funded with proceeds from Nadel's scheme.[4]  Amended

Complaint, ¶ 98 (incorporated by reference into Count I via ¶ 102).  Certainly, the allegations are

sufficient, providing ample identification of the circumstances constituting fraud so that

Defendants can prepare an adequate answer.  *See Hecht, supra,* 716 F.Supp.2d at 400.  *See also*

*In re Bernard Madoff Inv. v. Securuties LLC*, 445 B.R. 206, 235-36 (S.D.N.Y. February 24,

2011) (finding claim to recover fraudulent transfers from subsequent transferee provided "fair

notice" of the subsequent transfers sought to be recovered adequate per Rule 8).[5]

     As to Defendant's assertion that Wiand fails to describe the legal theory employed to

---

[4] Defendant asserts that the Foundation's annual reports indicate that Nadel was but one of its officers/ directors, and implies that transfers from the Foundation to Defendant were not necessarily derived from Nadel's scheme or directed by Nadel.  At this stage, however, I rely solely upon the allegations in the amended complaint.

[5] Although Defendant argues that dismissal is warranted due to Wiand's failure to allege that the transfers to the Foundation and subsequently to Defendant were in furtherance of the alleged Ponzi scheme, I find such allegations unnecessary per FUFTA.  As stated above, Wiand adequately pled a cause of action under FUFTA sufficient to satisfy Rule 8's requirements.

avoid transfers, it seems Defendant's complaint is that the allegations in count one commingle violations of Fla. Stat. § 726.105(1)(a) of actual fraud with violations of Fla. Stat. § 726.105(1)(b) and §726.106(1) of constructive fraud.  While the amended complaint may not be a model of clarity, it states claims for violations of both Fla. Stat. § 726.105(1)(a), actual fraud, and Fla. Stat. § 726.105(1)(b) and §726.106(1), constructive fraud.  And, the Federal Rules of Civil Procedure permit alternative pleading.  *See* Fed.R.Civ.P. 8(a)(3) (relief sought "may include relief in the alternative or different types of relief"); Fed.R.Civ.P. 8(d)(2) ("A party may set out 2 or more statements of a claim ... alternatively ... either in a single count ... or in separate ones"); Fed.R.Civ.P. 8(d)(3) ("A party may state as many separate claims or defenses as it has, regardless of consistency").  To the extent the Defendant takes issue with the factual specificity the alleged transfers, I do not find that argument persuasive.  Exhibit A to the amended complaint sets forth the dates, amounts, transferor and transferee of each transfer amount Wiand seeks to recover from Defendant.  I find this to be sufficient for pleading purposes.

　　　　　*b.  constructive fraud*

In contrast to actual fraud, which looks to the debtor's state of mind, constructive fraud focuses on the debtor's financial condition.  *Akanthos Capital Management, LLC v. CompuCredit Holdings Corp.*, 2011 WL 987353, *14 (N.D. Ga. March 15, 2011).   In the main, Defendant contends the amended complaint lacks allegations linking the receivership entities and the donations to Defendant and that these charitable donations were made in furtherance of the alleged underlying Ponzi scheme.  A transfer is fraudulent under a theory of constructive fraud if the transferor does not receive reasonable value in exchange and the transferor either (1) was engaged or was about to engage in a business or a transaction for which the remaining assets of

the transferor were unreasonably small in relation to the business or transaction or (2) intended to, believed, or reasonably should have believed that he or she would incur debts beyond his or her ability to pay them as they became due.  *See* Fla. Stat. §726.105(1)(b)(1)-(2).[6]  Alternatively, a transfer is fraudulent when a debtor makes a transfer without receiving a reasonably equivalent value in exchange for the transfer and the debtor was insolvent as a result of the transfer.  *See* Fla. Stat. 726.106(1).[7]

Here, count one of the amended complaint sufficiently states a constructively fraudulent transfer claim because it alleges that Nadel caused transfers to be made and Nadel, the Fund Managers, and the Hedge Funds were engaged or were about to engage in a business or transaction for which their remaining assets were unreasonably small in relation to the business or transaction, or Nadel intended that he, the Fund Managers, and/or the Hedge Funds incurred, or believed or reasonably should have believed they would incur, debts beyond their ability to pay as they became due.  *See* Amended Complaint, ¶ 107.   Count one further alleges that neither

---

[6]  Section 726.105 provides:
(1) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
…
(b) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor ...

[7]  Section 726.106 provides:

(1) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

the Hedge Funds nor any other person or entity received reasonably equivalent value in exchange for the transfers from the Hedge Funds to the Nadels and the Foundation.  *See* Amended Complaint, ¶¶ 108.  Moreover, as Wiand notes, as a matter of law, a Ponzi scheme is insolvent from the scheme's inception and detailed factual allegations in the amended complaint also form an adequate basis for Wiand's FUFTA claims under Fla. Stat. §§ 726.105(1)(b) and 726.106(1), each of which requires a showing of insolvency, unreasonably few assets, or an inability to pay debts, the latter two of which are also established by allegations of the scheme operated by Nadel through the Hedge Funds, Scoop Management and other Receivership entities.  *See In re Burton Wiand,* 2008 WL 818504, *6 (M.D. Fla. 2008) ("... Receivership Entities are considered insolvent from their very inception by virtue of being used to perpetrate a Ponzi scheme"); *Stenger v. World Harvest Church*, 2006 WL 870310 at *10 quoting *In re Indep. Clearing House Co.*, 77 B.R. 843, 847 (N. D. Utah 1987); accord *In re Ramirez Rodriguez*, 209 B.R. 424, 430-31 (S.D. Tex. 1997) ("The promised rate of return renders a Ponzi scheme operator insolvent from the scheme's inception, because the returns exceed any legitimate investments."); *Stenger v. Rodgers*, 2006 WL 449151, *7 (N.D. Ga. 2006) (Ponzi scheme insolvent from day one); *see also In re Fin. Federated Title & Trust,* 309 F.3d 1325, 1332 (11th Cir. 2002) (acknowledging principle**).**  The amended complaint also sets forth that Nadel formed the Foundation exclusively from proceeds of his Ponzi scheme (amended complaint ¶ 98) and that both the Foundation and the Nadels transferred funds to Defendant consisting of proceeds from Nadel's Ponzi scheme (amended complaint ¶ 99).

Accepting the allegations in the amended complaint as true, I find that Wiand has stated claims for constructive fraud under Fla. Stat. §§ 726.105(1)(b) and 726.106(1).  *See Special*

*Purpose Accounts Receivable Cooperative Corp. v. Prime One Capital Co., L.L.C.*, 2007 WL 2826603 (S.D. Fla. 2007) (denying motion to dismiss constructive fraud claim, finding "limited access to information at the pleading stage should not hinder Plaintiff from brining their claims against these alleged subsequent transferees"); *Akanthos, supra* (finding receiver stated *prima facie* case of constructive fraud under UFTA despite fact that defendants "dispute many of the Receiver's allegations ... factual disputes of this nature are not appropriate considerations on a motion to dismiss ... allegations in the Receiver's complaint are presumed true at this stage, and all reasonable factual inferences must be construed in their favor").

### c. Fla. Stat. §766.110

While Wiand is not required to negate an affirmative defense in the complaint, a Rule 12(b)(6) dismissal on statute of limitations grounds is appropriate when it is "apparent from the fact of the complaint" that the claim is time-barred. *Steinberg v. A Analyst Ltd.*, 2009 WL 806780, *8 (S.D. Fla. 2009) (finding transfer that occurred more than four years prior to the filing of the original complaint barred with regard to constructive fraud claims under Fla. Stat. § 726.105(1)(b) and 726.106(1)) citing *La Grasta v. First Union Securities, Inc.*, 358 F.3d 840, 845 (11th Cir. 2004). Defendant maintains that two particular transfers on December 28, 2004, and on December 2, 2005, are barred as untimely under §§ 726.105(1)(b) and 726.106(1) based on the applicable four-year statutes of limitation, namely Fla. Stat. § 726.110.[8] That provision, in

---

[8] In count one, Wiand alleges that the "transfers of scheme proceeds that Nadel caused to be made and which funded contributions to Defendant were inherently fraudulent because the transfers were made as part of the scheme." Wiand further alleges that "[t]hose transfers were fraudulent under Florida Statutes § 726.105(1)(a) because Nadel caused those transfers to be made with actual intent to hinder, delay, or defraud creditors of Nadel, the Fund Managers, and/or the Hedge Funds. ... Those transfers also were fraudulent under Florida Statutes § 726.105(1)(b) because: (a) Nadel caused those transfers to be made; and (b)(i) Nadel, the Fund

relevant part, states:

> A cause of action with respect to a fraudulent transfer or obligation ... is extinguished unless action is brought-
> (1) Under §726.105(1)(a), within 4 years after the transfer was made or the obligation was incurred or, if later, within 1 year after the transfer or obligation was or could reasonably have been discovered by the claimant ...
> (2) Under § 726.105(1)(b) or § 726.106(1), within 4 years after the transfer was made or the obligation was incurred ...

Applying this statute, Wiand can bring claims for actual fraud under § 726.105(1)(a) by commencing an action within four years after the transfer or within one year after he discovered it.  Wiand's claims for constructive fraud under §§ 726.105(1)(b) and 726.106(1) must be brought within four years after the transfer because the applicable statute of limitations period set forth in § 726.110(2) does not include the same discovery provision contained within § 726.110(1) permitting causes of action for actual fraud under § 726.105(1)(a) to be commenced within one year after discovery.  A well-settled principle of statutory construction provides that when the legislature has included a specific provision in one part of the statute and omitted it in another part of the same statute, the court must assume the omission was intentional.  Hence, I will not read the omitted discovery provision into § 726.110(2).  Likewise, I find the doctrine of equitable tolling may not be applied to the FUFTA §§ 726.105(1)(b) or 726.106(1) claims as these statutes make no allowances for tolling based on Wiand's discovery of the transfers, and I

---

Managers, and the Hedge Funds were engaged or were about to engage in a business or transaction for which their remaining assets were unreasonably small in relation to the business or transaction; or (ii) Nadel intended that he, the Fund Managers, and/or the Hedge Funds incur, or believed or reasonably should have believed they would incur, debts beyond their ability to pay as they became due. ... Those transfers also were fraudulent under Florida Statutes § 726.106(1) because neither Nadel, the Fund Managers, nor the Hedge Funds received a reasonably equivalent value in exchange for those transfers, and Nadel, the Fund Managers, and the Hedge Funds were insolvent at all relevant times."  Amended Complaint, ¶¶105-108.

will not contravene the intent of the Florida legislature. *See Steinberg v. A Analyst Limited, et al.*, 2009 WL 806780 (S.D. Fla. March 26, 2009) (holding that the doctrine of equitable tolling may not be applied to FUFTA § 726.105(1)(b) claims) citing *Parragon Health Servs. Inc. v. Cent. Palm Beach Cmty. Mental Health Ctr.,* 859 So. 2d 1233, 1235-36 (Fla. 4th DCA 2003) (holding that a cause of action under §726.106(2) was extinguished one year after date of transfer because one year discovery provision under § 726.110(1) does not apply to § 726.110(3)).

Accordingly, I conclude that the transfers to the Defendant that occurred more than four years before Wiand's initial complaint was filed on January 20, 2010, are time-barred for the FUFTA §§ 726.105(1)(b) or 726.106(1) claims.  Hence, Wiand's constructive fraud claims as to the December 28, 2004, and December 2, 2005, transfers are untimely.[9]  *See Steinberg, supra,* at *8 (finding transfer that occurred more than four years prior to the filing of the original complaint barred with regard to constructive fraud claims under Fla. Stat. § 726.105(1)(b) and 726.106(1)).

Defendant also moves to dismiss the § 726.105(1)(a) actual fraud claim with regard to the transfer on December 28, 2004, because this transfer was added in the amended complaint filed more than four years after the transfer occurred and more than one year after Wiand's appointment as receiver.  Again, Wiand can bring a § 726.105(1)(a) claim by commencing an action within four years after the transfer or within one year after the transfer was discovered by the claimant. Per this statute, Wiand, appointed on January 21, 2009, could not have possibly discovered the transfer until his appointment.  *See generally In re Blackburn*, 204 B.R. 4, 11

---

[9]  Defendant incorrectly refers to the December 2, 2005, transfers as occurring on December 5, 2005, in its memorandum of law in support of its motion to dismiss the amended complaint.  *See* doc. 32, p. 7.  Because there was no transfer on December 5, 2005, and because the Defendant correctly identifies the transfer date in the beginning of its' argument, I point the discrepancy out for clarification purposes only.

(M.D. Fla. 1997) (for purposes of applying the discovery rule, Florida law recognizes the adverse interest exception to imputing the knowledge of officers and directors to a corporation);  *Hecht v. Malvern Preparatory School*, 716 F.Supp. 2d 395, 399-400 (E.D. Pa. 2010) (deciding under Pennsylvania UFTA that wrongdoer dominated the partnership and fraudulently concealed facts and that the earliest date receiver "could have known of the purported fraudulent transfers" was the day she was appointed); *Wing v. Kendrick*, 2:08-cv-1002-DB-2009 WL 1362383, at *3 (D. Utah May 14, 2009) (applying Utah UFTA discovery rule, concluded that one-year discovery rule generally applies in cases involving Ponzi scheme entitles that have been placed in hands of equity receiver because fraudulent nature of transfers can only be discovered once Ponzi operator removed from scene).

Because Wiand did not include the December 28, 2004, transfer in Exhibit A to the original complaint and instead included it on Exhibit A to the amended complaint filed on November 15, 2010, the relevant inquiry is whether the amendment to the pleading adding the December 28, 2004, transfer relates back to the filing of the original complaint under Fed.R.Civ.P. 15(c).  Under Rule 15(c)(1)(B), "[a]n amendment to a pleading relates back to the date of the original pleading when ... the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading."[10]  In this case, the original complaint and the amended complaint pled the same claims

---

[10]  Wiand bears the burden of proof to rebut a statute of limitations grounds by relation back under Rule 15(c).  *See Merker v. Miami-Dade County Florida*, 485 F.Supp. 2d 1349 (S.D. Fla. 2007) (stating once defendant met *prima facie* case for a limitations defense, the burden shifts to plaintiff to demonstrate an exception or tolling provision applies, and finding plaintiff had burden of proving her new claim related back to her initial complaint under rule 15); *Hope for Familieis & Community Servic, Inc. v. Warren*, 721 F.Supp. 2d 1079, n.105 (M.D. Ala. 2010) (noting defendant bears burden of demonstrating applicability of the affirmative defense of

arising from the same conduct, transaction, or occurrence, and the amended complaint differs

only in adding the December 28, 2004, transfer and changing other transfers.  The original

complaint alleged that "[t]o allow Defendant to keep these contributions would be inequitable

and unjust" and that "[a]ll of the money Nadel wrongfully caused to transfer or pay to Defendant

was diverted and misappropriated by Nadel in furtherance of his scheme.  Thus, all of the money

transferred or paid to Defendant was improperly diverted assets of one or more of the Hedge

Funds."  *See* doc. 1, ¶¶99-101.   Moreover, the complaint notified the Defendant that "The

Receiver brings this action to recover money transferred to Defendant that originated from the

Hedge Funds" (complaint, ¶ 5), that Defendant "is a charitable organization that received

contributions which  consisted of monies obtained in connection with Nadel's scheme"

(complaint, ¶ 15), that "the Receiver is entitled to avoid and recover transfers equal to the amount

of money that Nadel caused to be made to Defendant" (complaint, ¶ 109), that "the Receiver is

entitled to avoid and recover those transfers on behalf of all of the Hedge Funds" (complaint, ¶

110), that "Nadel wrongfully transferred the Hedge Funds' money to Defendant as contributions"

(complaint, ¶ 113), and that "the circumstances alleged in this complaint render Defendant's

retention of that benefit inequitable and unjust, including to the investors of the Hedge Funds as a

whole, so Defendant must pay the Receiver, acting on behalf of the Hedge Funds, the value of

---

statute of limitations and that plaintiff carries burden with respect to relation back doctrine) citing
*Dodson v. Hillcrest Secs.*, 95 F.3d 52, 1996 WL 459772, *10 (5th Cir. 1996) (unpublished
opinion) ("While [the defendant] had the burden on summary judgment of presenting evidence
sufficient to prove its statute of limitations defense, [the plaintiff] had the burden of proof to
rebut the statute of limitations grounds by relation back under Rule 15(c)"); *DeBois v. Pickoff*,
2011 WL 1233665 (S.D. Ohio 2011) ("The plaintiff has the burden of demonstrating that the
requirements of Rule 15(c) have been met") citing *Dodson, supra.*

the benefit received (complaint, ¶ 115).

The amended complaint added allegations that "Defendant is a charitable organization that received funds from both the Foundation and the Nadels, based on records reviewed by the Receiver as of the filing of this complaint, between 2004 and 2008, Defendant received contributions originating with the Hedge Funds, and Defendant did not provide any value whatsoever in return for the contributions," (amended complaint, doc. 30, ¶ 99) and added the transfer dated December 28, 2004, transfer from the Nadels.   In the Eleventh Circuit, the critical inquiry in Rule 15(c) determinations is whether the original complaint gave notice to the defendant of the claim now being asserted.  *Moore v. Baker,* 989 F.2d 1129, 1132 (11th Cir. 1993).  In the amended complaint Wiand notified Defendant that it had received funds from the Nadels that consisted of proceeds from Nadel's Ponzi scheme; the original complaint did not include the specific allegation that "Nadel and his wife, Marguerite "Peg" Nadel (collectively, the "Nadels"), made charitable contributions from their personal joint checking account" that were added in the amended complaint.  However, per the allegations quoted above, the original complaint put the Defendant on notice that Wiand intended to recover money wrongfully transferred to it.

Although the Eleventh Circuit has yet to address the issue, the Northern District of Georgia has held that when a trustee alleged a fraudulent scheme that gave rise to constructive and fraudulent transfers, the complaint has sufficiently placed the defendant on notice that the trustee intends to recover all transfers made in connection with the fraudulent scheme.  *See In re Bauer Agency, Inc.*, 443 B.R. 918 (N.D. Ga. 2011).  And, the court held that "any required amendment to increase the specified amount of avoidable transfers and to specify their dates and

16

amounts would relate back under Rule 15(c)(1)(B).  Such an amendment would clearly assert a claim arising out of the conduct, transactions, and occurrences set out in the original complaint." *Id.* at 922.  *See also In re Gerardo Leasing, Inc.*, 173 B.R. 379, 390-91 (N.D. Ill. 1994) (finding additional payments added in amended complaint even though from separate debtor may lead to a finding at trial that the additional payments were part of one ongoing series of transfers).  The *Gerardo* court noted, "construing the facts as presented in the light most favorable to the non-moving party, any distinction between the legal theories presented is not presently dispositive." *Id.* at 391.  In *In re Universal Factoring Co., Inc.*, 279 B.R. 297 (N.D. Okl. 2002), a similar case involving a trustee who filed more than 100 adversary proceedings to recover transfers from Ponzi scheme investors, the court denied the defendant transferee's motion to dismiss because newly added transfers could be seen as "springing from the same underlying pattern of conduct that was alleged in the First Complaint."  The *Universal Factoring* court stated:

> ... the phrase 'conduct, transaction, or occurrence' found in Rule 15(c) is cast in the disjunctive.  Thus the claim alleged in the Trustee's Amended Complaint need not arise from the same transaction or occurrence attempted to be set forth in the Original Complaint, so long as it springs from the same conduct. Where there are a series of transfers, it is necessary that the Court examine whether the events are linked by some underlying conduct or transaction, so that the defendant may fairly be charged with notice that the plaintiff might amend his complaint to allege another event in the series after conducting discovery, or whether each event is an truly independent transaction. (citations omitted) Furthermore, when a series of events or transactions involves allegations of fraud, 'courts have struggled to find the appropriate balance between the certainty that statutes of limitations are intended to provide and recognizing the difficulty that plaintiffs often have in defining the extent and boundaries of fraudulent acts perpetrated against them.' *In re Everfresh Beverages, Inc.*, 238 B.R. 558, 574 (S.D.N.Y. 1999).  The court in *Everfresh Beverages* concluded that the relationship back standard should be read broadly where there are allegations of fraud (citation omitted).  *See also I.L.G.W.U. Nat'l Retirement Fund v. Meredith Grey, Inc.,* 190 F.R.D. 324, 328 (S.D.N.Y. 1999) (noting that "[t]he Second Circuit has held that this Rule [Fed.R.Civ.P. 15(c)] shall be 'liberally construed.'"

(citing *Mackensworth v. S.S. American Merchant*, 28 F.3d 146, 251 (2nd Cir. 1994)).

*Universal Factoring,* at 307.

Following this reasoning, I find that the original complaint in this action adequately notified Defendant that Wiand intends to recover all money wrongfully transferred to Defendant. Because the newly added transfer involves the same transferee, and may well in effect concern the same transferor, and the new transfer could be seen as springing from the same underlying scheme described in the original complaint, I recommend the Defendant's motion to dismiss on statute of limitations grounds be denied as to the § 726.105(1)(a) actual fraud claim arising from the December 28, 2004, transfer.  The December 28, 2004, transfer added in the amended complaint arose out of the same underlying pattern of conduct as those initially pled in the original complaint, and thus should relate back under Rule 15(c).

#### d.  subsequent transferee

The Uniform Fraudulent Transfers Act, the basis for Florida's FUFTA statutes, approved by the National Conference of Commissioners on Uniform State Laws in 1984 as a successor to the Uniform Fraudulent Conveyances Act (UFTA), contained important changes, including a new provision making transfers to insiders voidable and enhancing creditors' remedies against transferees.  This new provision in UFTA created a commonsense defense to an attack based on an allegedly actual intent to hinder, delay or defraud creditors.  "Under UFTA §8(a) [basis for and identical to FUFTA §726.109(1)(a)], a transfer made with such intent is not voidable against 'a person who took in good faith and for a reasonably equivalent value' or against any subsequent transferee.  Thus, although UFTA §4(a)(1) [basis for and identical to FUFTA

18

§726.105(1)(a)] focuses on the transferor's intent, UFTA §8(a) [and FUFTA §726.109(1)(a)] insulates the innocent transferee, thereby making only the collusive transferee liable." The Uniform Fraudulent Transfer Act: An Introductory Critique, 62 Am. Bankr. L.J. 87 (Winter, 1988). *See also Avoidance of Preferences and Fraudulent Transfers*, 547 Practising Law Institute 381 (July-Aug. 1990) (citing UFTA §8 Comment 1) ("Section 8(a) of the UFTA is an adaptation of the UFCA and provides that a transferee of an 'actual intent' fraudulent transfer has an absolute defense if he took the transfer in good faith and for a reasonably equivalent value. The burden of proof of such defense is on the transferee.").

Fla. Stat. §726.109(1) provides that "a transfer or obligation is not voidable under s. 726.105(1)(a) against a person who took in good faith and for a reasonably equivalent value or against any subsequent transferee or obligee." Relying on this defense, Defendant asserts that any contributions it received were in good faith and were subsequent transfers, separate and distinct from the initial transfers from Nadel to the Foundation and, thus, are not voidable. Defendant points out that transfers listed in Exhibit A to the amended complaint identify the transferor as the Guy-Nadel Foundation, Inc., a non-profit corporation organized in 2003, separate and distinct from Nadel individually. Defendant states that Nadel operated the Foundation along with several board members – specifically, his wife and two step children – who were in positions to collect for or add to funding for the Foundation and were able to make charitable contributions on its behalf.

The operative standard for Rule 12(b)(6) purposes is whether the factual allegations are enough to raise a right to relief above the speculative level. *Twombley,* 550 U.S. at 555; *Edwards v. Prime, Inc.*, 602 F.3d 1276,1291 (11th Cir. 2010). "Stated differently, the factual

allegations in the complaint 'must possess enough heft' to set forth 'a plausible entitlement to relief.'" *Id.* And when considering a 12(b)(6) motion to dismiss, a court looks only to the facts alleged in the complaint and not beyond. *See Emory v. Peeler*, 756 F2d 1547, n.3 (11th Cir. 1985). The complaint meets this standard.

Wiand asserts in the amended complaint:

> Defendant is a charitable organization that received funds from both the Foundation and the Nadels, which consisted of proceeds from Nadel's scheme. As detailed in Exhibit A attached hereto and incorporated herein, based on the records reviewed by the Receiver as of the filing of this complaint, between 2004 and 2008, Defendant received contributions originating with the Hedge Funds, and Defendant did not provide any value whatsoever in return for the contributions. ... To allow Defendant to keep these contributions would be inequitable and unjust, including to the investors of the Hedge Funds as a whole. All such money transferred or paid to Defendant, as a subsequent transferee, was diverted and misappropriated by Nadel in furtherance of his scheme. Thus, all of the money transferred to Defendant, as a subsequent transferee, was improperly diverted assets of one or more of the Hedge Funds.

*See* Amended Complaint, ¶¶ 99-101.

Per Fla. Stat. §726.109(1) a transfer under §726.105(1)(a) is not voidable only if the transferee took "in good faith and for a reasonably equivalent value or against any subsequent transferee or obligee." The Defendant bears the burden of proving this affirmative defense. *See* UFTA §8(a) Comment 1 ("The person who invokes this defense carries the burden of establishing good faith and the reasonable equivalence of the consideration exchanged"). Courts recognize that at this early juncture, it is premature to decide this issue. *See In re World Vision Entertainment, Inc.*, 275 B.R. 641, 659-60 (M.D. Fla. 2002) (protection of good faith defense decided on case-by-case basis established by looking at both actual and imputed knowledge of recipient of transfer); *Obermaier v. Arnett*, 2002 WL 31654535, *4 (M.D. Fla. 2002) (holding

that receiver adequately pled causes of action for fraudulent transfer and unjust enrichment and court need not determine whether the defenses can be asserted against receiver at motion to dismiss stage); *Perlman v. Five Corners Investors I*, 2010 WL 962953, *3 (M.D. Fla. March 15, 2010) (denying motion to dismiss and noting that "good faith defense is an affirmative defense, the burden of which is on defendants to prove");  *Malvern, supra*, 716 F.Supp. 2d at 401 (denying motion to dismiss claim to avoid fraudulent transfers from Ponzi assets to Foundation to Malvern Prep and finding defendants had burden to invoke and prove good faith defense). *See also Steinberg v. Barclay's Nominees (Branches) Ltd.*, 2008 WL 4601042, *8 (S.D. Fla. 2008) (denying motion to dismiss FUFTA claims where receiver's complaint alleged defendant was either an initial or subsequent transferee of the transfers or was the beneficiary of the value of the transfers).  Looking at the allegations in the amended complaint, Wiand was under no obligation to allege the Defendants lacked good faith and has adequately alleged that Defendant did not provide any value whatsoever in return for the contributions.  Accepting that as true, as I must, it is premature to consider the Defendant's good faith defense.  Therefore, I recommend the motion to dismiss be denied with regard to Defendant's assertion that Wiand cannot recover because it is a subsequent transferee.  *See Obermaier, supra,* 2002 WL 31654535, *4 (finding that whether equitable defenses could be asserted against receiver or precluded successful prosecution of case may be appropriate for summary judgment but must be rejected at motion to dismiss stage because facts pled do not compel finding in defendants' favor on such defenses).

### 3.  count two

In count two, Wiand alleges "Defendant received a benefit, when in furtherance and during the course of the scheme, the Hedge Funds' money was wrongfully transferred to

21

Defendant as contributions" and "has been unjustly enriched at the expense of the Hedge Funds (and ultimately, their investors) in the amount of the contributions received by Defendant." Amended Complaint, ¶¶ 114, 117.  Defendant posits that count two fails to state a cause of action because it suffers from the same unspecified pleading inadequacies as count one and Wiand has an adequate remedy at law, namely, count one.  Notably, the Defendant does not argue that Wiand has failed to plead the requisite elements of unjust enrichment.  Irrespective, I find the Defendant's arguments meritless. *See In re Burton Wiand Receivership Cases Pending in the Tampa Division of the Middle District of Florida*, 2007 WL 963165, *6 (M.D. Fla. 2007) ("this Court is reluctant to dismiss a claim that is equitable in nature at this stage of the proceedings."). For the same reasons already stated as to count one, Wiand states a cause of action in count two. Moreover, Rule 8(a)(3) permits alternative pleading.  *See* Fed.R.Civ.P. 8(a)(3) (relief sought "may include relief in the alternative or different types of relief"); Fed.R.Civ.P. 8(d)(3) ("A party may state as many separate claims or defenses as it has, regardless of consistency"); *Adelphia Cable Partners, L.p. v. E & A Beepers Corp.*, 188 F.R.D. 662, 666 (S.D. Fla. 1999) (Federal Rules of Civil Procedure "do not prohibit the pleading of an equitable remedy alongside a claim for monetary remedy ... Although the equitable relief ultimately may not be awarded where there exists an adequate remedy at law, the Receiver certainly may plead alternative equitable relief.").

Defendant also asserts that count two should be dismissed because it is time-barred by Fla. Stat. § 95.11(3)(k) which requires actions on a contract, obligation, or liability not founded on a written instrument to be commenced within four years.  *See Brown v. Nationscredit Financial Servs. Corp.*, 32 So.3d 661, 662 n.1 (Fla. 1st Dist. Ct. App. 2010); *Swafford v. Schweitzer*, 906 So. 2d 1194, 1195 (Fla. 4th DC A2005) (noting that statute of limitations for

unjust enrichment claim is four years under Fla. Stat. §95.11(3)(k)).  Defendant argues that the transfers dated December 28, 2004, and December 2, 2005, are time-barred, as Wiand filed the original complaint on January 21, 2010, more than four years after these transfers.

Insofar as Wiand argues that the delayed discovery rule should apply with respect to his unjust enrichment claim, Fla. Stat. § 95.031 provides:  "Except as provided in subsection (2) and in s. 95.051 and elsewhere in these statutes, the time within which an action shall be begun under any statute of limitations runs from the time the cause of action accrues."  Section 95.031(2) provides for a delay in the start of the limitations period for actions founded upon fraud and actions for products liability under Section 95.11(3).  However, Wiand does not point to any statute permitting application of a delayed discovery rule to actions for unjust enrichment.   The delayed discovery rule, hence, applies only to actions founded upon fraud, and is inapplicable to actions like Wiand's count II unjust enrichment claim governed by Fla. Stat. §95.11(3)(k).  Such claims are not afforded delayed discovery, and accrue "when the last element constituting the cause of action occurs."  *In re Burton Wiand Receivership Cases Pending in the Tampa Division of the Middle District of Florida*, Nos. 8:05-cv-1856-T-27MSS et al., 2008 WL 818504, at * 8 (March 26, 2008) (citing *Barbara G. Banks, P.A. v. Thomas D. Lardin, P.A.*, 938 So.2d 571, 577 (Fla. 4th DCA 2006) and *Swafford*, 906 So.2d at 1195-96) (rejecting application of delayed discovery doctrine to unjust enrichment action).   Under Florida law, an action for unjust enrichment accrues when the benefit is conferred.  *Id.* citing *Barbara G. Banks , P.A. v. Thomas D. Lardin, P.A.*, 938 So. 2d 571, 577 (Fla. 4th DCA 2006); *Swafford,* 906 So. 2d at 1195-96. Thus, the limitations period began when the transfers were made.  *See Davis v. Monahan*, 832 So.2d 708, 711 (Fla. 2002) (refusing to apply discovery rule to delay accrual of causes of action

23

for breach of fiduciary duty, conversion, civil conspiracy, and unjust enrichment because the statutory scheme did not call for application of the discovery rule to those claims; "To hold otherwise would result in this Court rewriting the statute, and, in fact, obliterating the statute.") Moreover, the limitations period for a claim of unjust enrichment "may be tolled only for the reasons set forth in Fla. Stat. § 95.051." *Id.* at *9 (citations omitted).

As Wiand makes no argument that tolling is appropriate under Fla. Stat. § 95.051, I conclude his unjust enrichment claim as to transfers that were made or received more than four years after Wiand filed the initial complaint on January 21, 2010, are time-barred.[11] Accordingly, it is hereby

RECOMMENDED:

1.  The motion to dismiss be GRANTED to as to Wiand's constructive fraud claims (count one) brought under FUFTA §§ 726.105(1)(b) or 726.106(1), and his unjust enrichment claims (count two) pertaining to the following transfers dated *before* January 20, 2006 (four years prior to the filing of the original complaint):

December 28, 2004, transfer of $250,000.00 from Art and Peg Nadel

December 2, 2005, transfer of $100,000.00 from Guy-Nadel Foundation, Inc.

2.  In all other respects, the motion should be DENIED.

IT IS SO REPORTED at Tampa, Florida on July 11, 2011.

_Mark A. Pizzo_
MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE

---

[11] Hence, as to count two, the unjust enrichment claims arising from the transfers on December 28, 2004, and December 2, 2005, both *before* January 20, 2006, are untimely.

## <u>NOTICE TO PARTIES</u>

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal.  28 U.S.C. § 636(b)(1).

cc:     Hon. Elizabeth A. Kovachevich
        Counsel of Record