UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

BURTON W. WIAND, as Receiver for
VALHALLA INVESTMENT PARTNERS,
L.P.; VIKING FUND, LLC; VIKING IRA
FUND, LLC; VICTORY FUND, LTD.;
VICTORY IRA FUND, LTD., AND
SCOOP REAL ESTATE, L.P.,

          Plaintiffs,

v.                                       CASE NO. 8:10-CV-248-T-17MAP

SARASOTA OPERA ASSOCIATION, INC.,

          Defendant.
_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on the Defendant's motion for partial summary judgment (doc. 60). Arthur Nadel, a Sarasota hedge fund manager, and his wife contributed over $600,000 to the Defendant while Nadel managed his hedge funds as a ponzi scheme. Burton Wiand, the receiver appointed in a Securities and Exchange Commission enforcement action aimed at dealing with Nadel's massive scheme, seeks to clawback those contributions under Florida's Uniform Fraudulent Transfer Act ("FUFTA").[1] At issue, is whether FUFTA demands Wiand show the contributions furthered the ponzi scheme, a requirement the Defendant says he cannot meet and entitles it to partial summary judgment

---

[1] Nadel is serving a lengthy sentence as a consequence of his guilty pleas in the Southern District of New York to securities fraud, mail fraud, and wire fraud. The factual bases supporting those pleas surround the events described in the complaint.

as to count one of the amended complaint.[2] Wiand argues FUFTA does not impose such a requirement, and the motion should be denied. I agree and recommend accordingly.[3]

*A. Rule 56 standards*

Motions for summary judgment should only be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a), (c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). But once the moving party makes the required showing, the burden shifts to the non-moving party to rebut that showing by producing affidavits or other relevant and admissible evidence beyond the pleadings. *Id.* at 324; *Jackson v. BellSouth Telecommunications*, 372 F.3d 1250, 1279-80 (11th Cir. 2004). The existence of some factual disputes between the litigants will not defeat an otherwise properly supported summary judgment motion; "the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986) (emphasis in original). The substantive law applicable to the claimed causes of action will identify which facts are material. *Id.* Essentially, an issue of fact is "material" if, under the applicable substantive law, it might affect the outcome of the case, and an issue of fact is "genuine" if the record

---

[2] Wiand's amended complaint levels two claims against the Defendant: FUFTA (count one) and unjust enrichment (count two). The Defendant's motion for partial summary judgment only addresses the FUFTA count.

[3] Per 28 U.S.C. § 636 and Local Rule 6.01(b), the district judge referred these motions to me for a report and recommendation.

taken as a whole could lead a rational trier of fact to find for the non-moving party. *Hickson Corp. v. Northern Crossarm Co., Inc.*, 357 F.3d 1256, 1259-60 (11th Cir. 2004). In considering the evidence, the court resolves all reasonable doubts about the facts in favor of the non-moving party and draws all justifiable inferences in its favor. *Id.* at 1260. The court does not, however, weigh the evidence or make findings of fact. *Anderson*, 477 U.S. at 249-50.

B. *Background*

Only a limited introduction to the facts is necessary to understand the issues here. Nadel effectively controlled the trading activities of the hedge funds through his management firms (Scoop Management and Scoop Capital).[4] For his services, he not only compensated himself handsomely, he also paid his wife extravagantly for "work" performed.[5] For example, between 2002 and 2008, the hedge funds paid Scoop Management

---

[4] The specific hedge funds Nadel controlled are now part of the receivership estate Wiand represents.

[5] Mrs. Nadel's compensation averages just over $175 thousand yearly. When asked what she did to justify her significant compensation, she answered:

> Well, I would go in and would find out what had – what had transpired, you know, because my days were so nonspecific. I wasn't a secretary that came in and had duties to sit down and immediately do. I wasn't – if there were any correspondence or any paperwork – or I'd find out from everybody else what they had done or what needed to be done. Sometimes run the vacuum cleaner. I can't – just to make sure that everything was running smoothly. I – taking care of so much of my own stuff. I had my own filing cabinet, which was for what I was doing with the opera and what I was doing with other organizations in the town and just keeping up with that aspect of my life. And then there was the Scoop, you know, which mostly consisted of copies of what everybody else had. ... I can't really be specific, because I

$64,214,099.22 in total "fees," and Scoop Management paid Mrs. Nadel $1,225,870.77 in purported wages. From all this, the Nadels contributed heavily to the Defendant. The ostensible sources were Nadel's charitable foundation, the Guy-Nadel Foundation, Inc. (the "Foundation"), and their joint bank account. *See* doc. 30-1 Ex. A.[6] But Wiand contends Nadel's scheme fueled the Foundation and the Nadels' joint account, assertions the Defendant does not really challenge.

*C. Discussion*

Wiand's first count describes three alternative FUFTA violations: "actual fraud" under § 726.105(1)(a), and two separate theories of "constructive fraud" under §§ 726.105(1)(b) and 726.106(1). The Defendant's partial summary judgment motion only speaks to the first, the "actual fraud," whose operative statute, §726.105(1)(a), says the

---

don't know … Not having had any specific duties or handling any part of the business of the investments, but the business of running the office.

Depo. of Marguerite Nadel, doc. 64-1, p. 57, lines 3-25.

[6] The contributions at issue are:
December 28, 2004, Art and Peg Nadel transferred $250,000 to Defendant
December 2, 2005, Foundation transferred $100,000 to Defendant
May 10, 2006, Foundation transferred $12,000 to Defendant
December 15, 2006, Foundation transferred $100,000 to Defendant
December 22, 2006, Foundation transferred $2,000 to Defendant
August 22, 2007, Foundation transferred $16,000 to Defendant
October 31, 2007, Foundation transferred $350 to Defendant
December 3, 2007, Foundation transferred $100,000 to Defendant
January 30, 2008, Foundation transferred $200 to Defendant
March 11, 2008, Foundation transferred $2,000 to Defendant
April 3, 2008, Foundation transferred $575 to Defendant
May 16, 2008, Foundation transferred $20,000 to Defendant

4

following:

> "[a] transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation [ ] [w]ith actual intent to hinder, delay, or defraud any creditor of the debtor."

The Defendant reads into this that Wiand must also show that these transfers were in furtherance of the Ponzi scheme.

"The starting point in statutory construction is the language of the statute, and if that is plain, then the sole function of the court is to enforce the statute according to its terms." *Calzadilla v. Banco Latino Internacional*, 413 F.3d 1285, 1287 (11th Cir. 2005) (citation omitted). FUFTA's plain language does not impose the requirement the Defendant advances. What the statute does require Wiand to show is that the debtor made the transfer with requisite intent to hinder, delay or defraud, a fact that Wiand can establish by proving the underlying scheme. *See United States v. Silvestri*, 409 F.3d 1311, 1317 n.6 (11th Cir. 2005) (in a Ponzi scheme, money invested by later investors is used to pay returns to early investors with the goal of attracting more investors); *Scholes v. Lehman*, 56 F.3d 750, 761 (7th Cir. 1995) ("The statute makes no distinction among different kinds of recipient of fraudulent conveyances. Every kind is potentially liable."); *Hecht v. Malvern Preparatory School*, 716 F.Supp. 2d 395, 400-02 (E.D. Pa. 2010) (denying motion to dismiss receiver's fraudulent transfer and unjust enrichment claims to recover donations to school from scheme proceeds); *Quilling v. Stark*, No. 3:05-cv-1976-L, 2006 WL 1683442, at *6 (N.D. Tex. June 19, 2006) (denying motion to dismiss complaint alleging Stark operated a Ponzi scheme and

5

diverted scheme proceeds to family members, finding that less detail is required in the complaint because additional detailed information regarding transfers peculiarly within knowledge of Stark).[7]

*D. Conclusion*

Because Fla. Stat. §725.105(1)(a) does not require Wiand to show these transfers furthered the Ponzi scheme, I recommend the Defendant's motion for partial summary judgment (doc. 60) be denied.

IT IS SO REPORTED at Tampa, Florida on February 7, 2012.

*/s/ Mark A. Pizzo*
MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE

**NOTICE TO PARTIES**

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal. 28 U.S.C. § 636(b)(1).

cc:  Hon. Elizabeth A. Kovachevich
     Counsel of Record

---

[7] Although I find the FUFTA claim at issue does not require Wiand to show Nadel or the entities he controlled made these contributions to further his scheme, I would still recommend denying the motion for partial summary even if such a requirement were to be read into the statute. Nadel derived more that an altruistic benefit from his contributions; he garnered legitimacy and good will. That legitimacy, arguably, promoted his scheme by attracting investors.